IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

WILLIAM DOUGLAS BROWN and
BRENDA HARRIET BROWN,

           Plaintiffs,

v.                                     CIVIL ACTION NO.   3:16-2996

CSX TRANSPORTATION, INC. and
JOHN DOES 1 TO 3,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant CSX Transportation's Motion for Summary Judgment. ECF No. 13. The motion requests that the Court find that an easement granted to CSX by Plaintiffs predecessors-in-title for a rail line that required it to construct farm crossings does not require it to build an additional crossing because it is impossible due to the landscape. For the following reasons CSX's motion is **DENIED** and the case is **DISMISSED**.

                        **I.**        **Background**

Plaintiffs William and Brenda Brown brought a declaratory judgment action against CSX requesting that the Court determine whether they have a legal right of access across the CSX rail line, whether that access is possible, where the access should be, and if access is not possible determine how Plaintiffs will access their property. Plaintiffs' complaint takes no position on the resolution of any of the determinations they ask the Court to make.

Plaintiffs' case has a somewhat winding history. In short, however, Plaintiffs owned a large tract of property jointly with their uncle in Mason County, West Virginia. The deed to the property

contained an 1887 easement granting CSX's predecessor in interest a right-of-way across the property and in exchange the grantee is required to "construct and forever maintain convenient farm crossing at such points as may be designated [by the grantors]." Def.'s Mem. of Law in Supp. of Mot. for Summ. J. 2, ECF No. 14. At some time in the past CSX constructed two crossings that served the jointly owned property. Then, Plaintiff's uncle initiated a partition action in state court, which resulted in a partition that deprived the Brown's of both crossings, effectively land-locking the property. During the underlying state court litigation, the Brown's objected to the partition because they do not believe it is possible to construct a crossing on their portion of the property due to a steep grade between the rail line and the property. The state trial court did not agree and held that the Brown's did not meet their burden to show that a crossing was impossible, and without such a showing the easement granted to CSX requires CSX to construct a crossing on the Brown's portion of the divided property. CSX was not part of the litigation.

Plaintiffs appealed the case up to the West Virginia Supreme Court of Appeals to no avail. Plaintiffs then brought this declaratory judgment action seeking a determination of their access rights. CSX now moves this Court for summary judgment in its favor, arguing that it is not bound by the state court decision because its property rights were adjudicated but it was not a party to the case, and in any event, a crossing connecting the Brown's property to a public route is impossible. Plaintiffs' response does not oppose CSX's arguments and an affidavit by Mr. Brown supports CSX's argument. Mr. Brown, in his opinion based on work in mining and timbering, does not believe that a crossing is possible on Plaintiffs' land due to the topography. Plaintiffs also explain that should the Court agree with Mr. Brown's assessment (and CSX's), they plan to petition the Mason County Circuit Court for relief from partition action.

## II. Legal Standard

The Declaratory Judgment Act provides: "In a case of *actual controversy* within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

There is no formula to determine whether a dispute is a proper Article III "Case or Controversy." In the declaratory judgment context, Justice Jackson made an attempt in a classic formulation. In *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227 (1937), Justice Jackson wrote:

> The controversy must be definite and concrete, touching the legal relations of parties having *adverse legal interests*. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Id.* at 240–41 (emphasis added).

The Supreme Court recently noted, however, "*Aetna* and the cases following it do not draw the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not." *MedImmune*, 549 U.S. at 127. The question a federal court must answer in the affirmative to find a case justiciable is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

### III.     Analysis

Turning to the facts of this case, the Court cannot say that the parties have sufficiently adverse legal interests to create a "Case or Controversy." Plaintiffs complaint tellingly does not advance a particular stance on any of the issues they wish this Court to determine. They do not claim that they in fact do have a right of access and that CSX has a correlative duty to construct a crossing across its rail line. The posture of the parties reveals the deficiency in the case. For example, if Plaintiffs claimed a right of access, a declaratory judgment action would be superfluous. Plaintiffs could simply bring an action for specific performance of the 1887 easement or to enforce the state court judgment. A declaratory judgment would just add an additional layer to a straightforward problem.

On the other hand, the party that most obviously would have an interest in a declaratory judgment determining the effect of the 1887 easement is CSX. Yet, it did not bring this action. Moreover, if it had brought such an action, the case would only be justiciable if Plaintiffs had some intent to enforce the easement. *See id.* at 129 (holding that there was a case or controversy where although a patent licensee continued to pay royalties it did so only because it was "coerced" by the looming threat of treble damages if it halted payments and the patent was upheld).

The information provided to the Court, however, leads it to believe that Plaintiffs have no intention to enforce the 1887 easement or the state court judgment. The Court does not doubt that Plaintiffs asked CSX to construct a crossing on their property. When CSX determined that it would be impossible, however, Plaintiffs did not then seek to enforce their rights. Instead, Plaintiffs filed this declaratory judgment action with the apparent intent to procure an advisory opinion to use in future litigation to show that the 1887 easement cannot be enforced because it is impossible to construct a crossing on Plaintiffs' property. "To be sure, an advisory opinion may sometimes be

valuable. But more is required before one can invoke the authority of the courts created by Article III." *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011); *see also Flast v. Cohen*, 392 U.S. 83, 96 (1968) ("[T]he implicit policies embodied in Article III . . . impose the rule against advisory opinions on federal courts.").

Indeed, Plaintiffs do not dispute CSX's expert affidavit that a crossing would be technically impossible, and if it were possible, it would create serious safety concerns for passing trains. Mr. Brown's affidavit avers as much. Plaintiffs also took this stance, albeit in a more aggressive fashion, in the underlying state partition action. This last fact, although not dispositive of the existence of a "controversy" in this case, lends more support to the inference that there is no "controversy" in this case, as Plaintiffs have consistently argued that a crossing is impossible. There is thus no disagreement between the parties. In order for the case to be a controversy in the Constitutional sense, the parties' disagreement must not be "nebulous or contingent but must have taken on fixed and final shape." *Pub. Serv. Comm'n of Utah v. Wycoff*, 344 U.S. 237, 244 (1952) (finding no case or controversy in a declaratory judgment action brought against a Utah agency that had taken no adverse action against the plaintiff and finding that there was no risk of penalty or liability without the declaratory judgment).

Plaintiffs have taken no action, save informal conversations, to enforce their rights, and there is every indication that this litigation is intended to be used to escape from the state partition action. "[W]hen the request is not for ultimate determination of rights but for preliminary findings and conclusions intended to fortify the litigant against future [litigation], it would be a rare case in which the relief should be granted." *Id.* at 246. Plaintiffs explain in their response to CSX's motion that should the Court agree with CSX (and Mr. Brown consequently) it intends to seek relief from the partition. From the Court's vantage, it appears Plaintiffs are attempting to "gain a litigation

advantage by obtaining an advance ruling on an affirmative defense" that their uncle may raise should Plaintiffs seek relief from the partition action, that is, that the partition need not change because Plaintiffs can enforce the easement against CSX. *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998). "Any judgment in this action thus would not resolve the entire case or controversy . . . , but would merely determine a collateral legal issue governing certain aspects of [a] . . . pending or future suit." *Id.*

To be sure, Plaintiffs' position is a pitiable one. The Court does not doubt CSX's expert's (and Mr. Brown's) opinion that a crossing on Plaintiffs' property is either completely impossible or extremely unsafe. It is similarly unfortunate that Plaintiffs could not make this apparent to the state trial court and now possess an essentially land-locked property. None of these concerns, however, dilute the limited jurisdiction of an Article III court. Where there is no "Case or Controversy" the case cannot be heard. *MedImmune*, 549 U.S. at 127.

The Court would also like to point out that this case is only contingently nonjusticiable. Had CSX brought a declaratory judgment action and had it been able to show that the Brown's intended to enforce their access rights, the Court could surely hear the case. As it has been presented, however, there is no controversy between the parties, and it appears that both parties, by presenting complimentary arguments and evidence, are attempting to procure an advisory opinion that would have no practical consequences except to fortify future litigation to set aside the partition. Accordingly, the Court finds that Plaintiffs' case does not present a case or controversy and therefore is not justiciable. CSX's Motion for Summary Judgment is therefore **DENIED** and the case is **DISMISSED**.

## IV. Conclusion

Defendant CSX Transportation's Motion for Summary Judgment is **DENIED**. ECF No. 13. Plaintiff has failed to present a justiciable case and therefore the case is **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: March 16, 2017

_____
ROBERT C. CHAMBERS, CHIEF JUDGE